STATE of Minnesota, Respondent,

v.

Harry L. NORTHARD, Appellant
(C2-83-1875),

STATE of Minnesota, Respondent,

v.

Alvin Rozell STAFFORD, Appellant
(C3-83-1982),

STATE of Minnesota, Respondent,

v.

James E. CLARK, Appellant
(C4-83-2008),

STATE of Minnesota, Respondent,

v.

Robert Alan CARLSON, Appellant
(C7-84-22).

Nos. C2-83-1875, C3-83-1982,
C4-83-2008 and C7-84-22.

Court of Appeals of Minnesota.

April 24, 1984.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellants Northard, Stafford and Clark.

C. Paul Jones, State Public Defender, Brian I. Rademacher, Asst. State Public Defender, Minneapolis, for appellant Carlson.

Hubert H. Humphrey III, Atty. Gen., Thomas Johnston, Hennepin County Atty., Beverly J. Wolfe, Asst. County Atty., Minneapolis, for the State in C2–83–1875 and C4–83–2008.

Hubert H. Humphrey III, Atty. Gen., Thomas Foley, Ramsey County Atty., Steven C. Decoster, Asst. County Atty., St. Paul, for the State in C3–83–1982.

Hubert H. Humphrey III, Atty. Gen., St Paul, Robert Carolan, Dakota County Atty., Hastings, for the State in C7–84–22.

Kathleen Morris, Scott County Atty., Shakopee, for the State in C7–84–220.

Considered and decided by POPOVICH, C.J., and WOZNIAK and LANSING, JJ.

## OPINION

LANSING, Judge.

The cases before us raise questions about the retroactivity of reduced presumptive sentences under the guidelines for offenses carrying a mandatory minimum sentence.[1] In 1983, the legislature applied "good time" reductions to mandatory minimum sentences. The Sentencing Guidelines Commission in turn reduced the presumptive duration for mandatory minimum sentences effective November 1, 1983. The common issue in these four cases is whether the reduced presumptive sentences are retroactive for those inmates sentenced before November 1, 1983.

1. These cases were appealed in separate actions and consolidated by order of this court on March 6, 1984.

2. For example, an offender convicted of an offense with a mandatory minimum sentence of

## I

This retroactivity determination requires an examination of the mandatory minimum sentence law. Minn.Stat. § 609.-11, subd. 5 (1982), is known as the "use a gun, go to prison" law. This statute provides that:

Any defendant convicted of an offense listed in subdivision 9 in which the defendant or an accomplice, at the time of the offense, used, whether by brandishing, displaying, threatening with, or otherwise employing, a firearm, shall be committed to the commissioner of corrections for a mandatory minimum term of imprisonment of not less than three years, nor more than the maximum sentence provided by law. Any defendant convicted of a second or subsequent offense in which the defendant or an accomplice, at the time of the offense, used a firearm shall be committed to the commissioner of corrections for a mandatory minimum term of imprisonment of not less than five years, nor more than the maximum sentence provided by law.

Prior to November 1983, good time reductions did not apply to mandatory minimum sentences. Minn.Stat. § 244.04, subd. 1 (1982); Minnesota Sentencing Guidelines, II.E (eff. 8/1/81). The Guidelines Commission was concerned with the "serious institutional management problems" that could occur if inmates were not provided an incentive for good behavior. Therefore, the presumptive sentences for mandatory minimum sentences were set at one-third greater than the minimum sentence.[2] By this method, inmates were given an incentive for good behavior because their presumptive sentences could be reduced by one third if they avoided disciplinary violations. Further, inmates would serve at least the mandatory minimum sentence in prison as the legislature intended.

three years was presumptively sentenced to 54 months; an offender convicted of an offense with a minimum sentence of five years was presumptively sentenced to 90 months.

In 1983 the legislature enacted new legislation. Under the new law, good time can now be applied to mandatory minimum sentences. The law provides in part:

Notwithstanding the provisions of section 609.11, subdivision 6, and section 609.346, subdivision 1, the term of imprisonment of any inmate sentenced to a presumptive fixed sentence after May 1, 1980, shall be reduced in duration by one day for each two days during which the inmate violates none of the disciplinary offense rules promulgated by the commissioner.

Minn.Stat. § 244.04, subd. 1 (1983).

Following this enactment, the Guidelines Commission decided to reduce what they considered to be "inflated presumptive sentences" for mandatory minimum sentences. Summary of Major Sentencing Guidelines Changes, Minnesota Sentencing Guidelines (1983). The presumptive sentences were reduced by one third so that the presumptive sentences were exactly the same length as the mandatory minimum sentences. Thus, the presumptive sentence for an offense with a mandatory minimum sentence of three years was changed to 36 months; the presumptive sentence for an offense with a mandatory minimum sentence of five years was changed to 60 months.

Included within the same legislative enactment allowing good time reductions for mandatory minimum sentences was a provision for retroactive effect. *See Laws of Minnesota 1983*, Chapter 274, Sections 6 and 10. The retroactivity section is contained in Minn.Stat. § 244.09, subd. 11 (1983), which provides:

The commission shall meet as necessary for the purpose of modifying and improving the guidelines. *Any modification* of the guidelines that causes a duration change *shall be retroactive* for all inmates serving sentences imposed pursuant to the Minnesota sentencing guidelines if the durational change reduces the appropriate term of imprisonment.

(Emphasis added).

The question presented is whether the reduction of the presumptive sentence for mandatory minimum sentences was retroactive for inmates sentenced before November 1, 1983. A law is not to be construed as retroactive unless the legislature clearly and manifestly intended it to be retroactive. Minn.Stat. § 645.21 (1982). In our view, Minn.Stat. § 244.09, subd. 11, is an example of a law which is clear on its face. It says *any* modification of the guidelines that reduces the sentence of those inmates serving a sentence pursuant to the Guidelines is retroactive. The reduction of the presumptive sentences for mandatory minimum sentences is beyond question a modification that reduces duration and is therefore retroactive for those inmates who are serving sentences imposed pursuant to the guidelines.

This does not mean that every inmate serving a mandatory minimum sentence is automatically entitled to a reduction. The November 1983 changes lowered the *presumptive* sentences for mandatory minimum offenses. If the individual case involved substantial and compelling circumstances, the sentencing judge could depart from the new presumptive sentence, so long as written reasons specifying the substantial and compelling circumstances were provided. *Cf. Novak v. State*, 325 N.W.2d 132 (Minn.1982).

In response to the November 1983 changes, the Department of Corrections' developed a "Retroactive Sentencing" form to facilitate the sentencing review process. Each form contained pertinent sentencing information about a particular inmate's sentence. The form indicated the length of the new presumptive sentence and beneath said, "to be imposed unless a departure is deemed appropriate." The form then added:

If the judge did not depart upward initially, but wishes to depart upward at this time, there are two options.

_____ Maintain original sentence. (Please check if this option is chosen, sign in section below, and submit a departure report).

_____ Reduce sentence, but impose a sentence greater than the new presumptive sentence range. (Please check if this option is chosen, note new sentence and sign in section below, and submit a departure report).

## II

Having determined the issue of retroactive application, the particular facts of each case will be dealt with separately.

### State v. Northard

A man named "Charles" deceived a victim into going with him to an apartment building to buy a coat from him. The victim was told to go into the bedroom because six men were in the living room area. "Charles" then ordered the victim to take off her clothes, which she did. Harry Northard then entered the room, pulled out a shotgun and pointed it at her chest and said, "You're gonna cooperate." Northard made her perform fellatio on him and then had intercourse with her. He then got up while "Charles" had intercourse with her. Northard then had intercourse with her again while "Charles" made her perform fellatio on him.

Northard pleaded guilty to criminal sexual conduct in the third degree, and was sentenced to 54 months in prison, the presumptive sentence for the mandatory minimum sentence.

The sentencing court refused to reduce Northard's sentence in response to the November 1983 changes. The court's written reason for departing was that because a firearm was used in committing the offense of criminal sexual conduct in the third degree, the original sentence should be maintained.

■ The firearm factor was taken into account by the legislature in determining the elements of the mandatory minimum sentence for using a firearm in Minn.Stat. § 609.11, subd. 5. It cannot also be used as a basis for a durational departure. *See State v. Gardner,* 328 N.W.2d 159 (Minn.

1983); *State v. Hagen,* 317 N.W.2d 701 (Minn.1982).

■ However, we believe there were sufficient aggravating circumstances present to uphold the departure. The victim was the subject of a brutal gang rape with multiple sexual acts. She was terrorized and in fear of her life by having a shotgun pointed at her. The particularly cruel way an offense is committed justifies departure. *State v. Deschampe,* 332 N.W.2d 18 (Minn.1983); Minnesota Sentencing Guidelines, II.D.2.b. The forced participation of a victim in multiple sexual activities with multiple participants justified a durational departure in *Davis v. State,* 324 N.W.2d 802 (Minn.1982). The aggravating circumstances in this case also justify the sentence imposed.

### State v. Stafford

On November 2, 1981, Alvin R. Stafford and another person entered a Winchell's Donut Shop in Maplewood, Minnesota. One of them pulled out an automatic pistol and told the clerk, "Don't close the cash register or I'll blow off your head." They then reached into the cash drawer, grabbed $145 and fled.

Stafford was 15 years old at the time of the offense, but was certified for prosecution as an adult. Upon his conviction for aggravated robbery, Stafford was given the presumptive sentence of 54 months. The sentencing judge reviewed the sentence and found aggravating circumstances which warranted maintaining the original 54-month sentence. The departure report indicated the following grounds for departing: (1) an uncharged attempted aggravated robbery later in the evening of the Winchell's robbery; (2) a long juvenile history involving assaults with razors, knives and guns; (3) his minimal adjustment to probation; (4) that he is a serious offender; (5) his mother's statement that he used to steal from purses in church and that he has a bad temper and physically abuses her; and (6) that he is highly sophisticated and dangerous.

The general issue facing a sentencing court in deciding durational departure questions is whether the defendant's conduct was significantly more or less serious than that typically involved in the commission of the crime in question. *State v. Broten*, 343 N.W.2d 38 (Minn.1984). The factors justifying departure should focus on the degree of the defendant's culpability. *State v. Wright*, 310 N.W.2d 461 (Minn.1981). Therefore, the principal concern in durational departure questions is the course of conduct underlying the charge for which the defendant is being sentenced. *Broten*, 343 N.W.2d at 41.

There do not appear to be any factors which would justify the durational departure of this case. Reason (1) cannot be used, since an uncharged offense cannot justify a departure. *State v. Chase*, 343 N.W.2d 695 (Minn.Ct.App.1984). Reasons (4) and (6) are insufficient because the dangerousness of the defendant is not a proper factor for a durational departure. *State v. Gardner*, 328 N.W.2d 159 (Minn.1983). The juvenile history of the defendant has already been taken into account in determining the juvenile history score, so this too is an improper aggravating factor. *Cf. State v. Cizl*, 304 N.W.2d 632 (Minn.1981). *See* Minnesota Sentencing Guidelines, II. B.4, II.B.401–06. Use of the prior juvenile record in this manner is contrary to the spirit of the Guidelines. *Cf. State v. Erickson*, 313 N.W.2d 16 (Minn.1981). The remaining factors do not relate to the defendant's culpability for this charge and are not appropriate factors to consider for durational departures.

The State asserts that the defendant's criminal career demonstrates sufficient aggravating factors to justify departure. The State supports this by noting that a permissible factor to consider is that the "current conviction is for an offense in which the victim was injured and there is a prior felony conviction for an offense in which the victim was injured." Minnesota Sentencing Guidelines II.D.2.b. The State contends that although the clerk in the Winchell's shop was not injured, the defendant has injured others in the past with weapons. However, this aggravating factor is inapplicable here because there is no victim injury or prior felony convictions.

The State's other contention is that the store clerk was particularly vulnerable because there were two robbers and the victim was isolated and exploited. These facts do not indicate the defendant's conduct was more serious than that in the typical aggravated robbery. Thus, the defendant's sentence must be reduced to 36 months, the new presumptive sentence.

### State v. Clark

On November 10, 1982, James Clark, armed with a .38 caliber pistol, and Joe Bandy, armed with a long-barreled revolver, robbed a clerk at the Fletcher's Purity Dairy Store in Minneapolis. During the robbery, Bandy held his gun against the side of a customer and Clark pointed his gun at the clerk as the clerk filled a paper bag with money. Clark pleaded guilty to aggravated robbery and was sentenced to 90 months, the presumptive sentence under the mandatory minimum sentence statute.

The sentencing court refused to reduce Clark's sentence in light of the November 1983 changes. However, the court did not file a departure report or otherwise submit written reasons for maintaining the original sentence. Maintaining the original sentence without specifying reasons for departure was error. Therefore, we order the Department of Corrections to reduce Clark's sentence to 60 months, the new presumptive sentence for his offense.

### State v. Carlson

On July 23, 1983, Robert Carlson and Robert Moreland entered a Q Petroleum station in Eagan, Dakota County. With Carlson brandishing a sawed-off shotgun, they robbed the station and then tied up the attendant. About one week later, they robbed the J & D Grocery Store in New Market Township, Scott County.

Again, Carlson was holding a sawed-off shotgun.

Contemporaneous plea negotiations occurred, resulting in Carlson's plea of guilty to aggravated robbery to the Dakota County offense, and a plea of guilty to aggravated robbery to the Scott County offense. In a combined sentencing procedure, the Scott County District Court imposed a 54-month sentence for the Dakota County conviction. This was the presumptive sentence for the mandatory minimum sentence. For the Scott County conviction, the court departed downward from the 90-month presumptive sentence and imposed a 54-month sentence to run concurrently with the Dakota County sentence.

In a departure report, the sentencing court refused to reduce Carlson's sentence in light of the November 1983 reductions. We find no error. Under the new presumptive sentences, Carlson's Dakota County sentence is presumed to be 36 months, and his Scott County sentence is presumed to be 60 months. Since the actual sentence imposed (54 months) for the Scott County offense was less than the new presumptive sentence, we cannot find any merit to Carlson's argument that he should only serve 36 months. The court was under no requirement to depart durationally downward again for the Scott County offense. *See State v. Kindem,* 313 N.W.2d 6 (Minn. 1981).

Therefore, the judgments in *State v. Northard,* C2–83–1875, and *State v. Carlson,* C7–84–22, are affirmed, and the judgments in *State v. Stafford,* C3–83–1982, and *State v. Clark,* C4–83–2008, are reversed.