**STATE of Minnesota, Respondent,**

v.

**Thomas Hardin HAMILTON, Appellant.**

No. C7–84–280.

Court of Appeals of Minnesota.

May 15, 1984.

Review Denied July 26, 1984.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Robert F. Carolan, Dakota County Atty., Mark Nathan Lystig, Asst. County Atty., Hastings, for respondent.

Considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

This is a sentencing appeal. Pursuant to a plea negotiation defendant pled guilty to second degree criminal sexual assault and was sentenced to the presumptive sentence of 90 months. He appeals from an order denying a reduction of his sentence to 60 months pursuant to Minn.Stat. § 244.09, subd. 11 (Supp.1983). We affirm.

## FACTS

Defendant, 41, was convicted of raping his 17-year-old stepdaughter. The convic- tion arises from an incident which started when defendant picked up his stepdaughter from a bus stop in a car she didn't recog- nize. He told her that he could get the car for her at a good price and asked if she wanted to take it for a test drive. While they were driving defendant began talking about the time he raped her at home two months earlier.

During the course of the conversation defendant pointed a revolver at the step- daughter. She became frightened and pushed it away, whereupon he tied her up and put her in the back seat of the car.

He then drove to a rental storage area where he had previously rented a stall, stuffed a rag in her mouth, taped her mouth, and with a scissors cut off her jeans and underwear.

While he was undressing himself he heard a car outside. Defendant told the daughter to "stay quiet because if anyone came in there would be two people dead and maybe even three." He then raped her.

When he finished he tied a rope around her neck and to her ankles and tied the end to a hook by the door. He told her if she wiggled too much or slid off the seat the rope would strangle her. Before he left, he threw a couple of blankets over her and locked the entrance to the storage area. The temperature was about 18 degrees. The car was not left running.

Defendant was charged with kidnapping, second degree assault and second degree criminal sexual assault. Pursuant to a plea negotiation, he pled guilty to second degree criminal sexual assault, requiring the impo- sition of a five year mandatory minimum sentence. The State agreed not to seek aggravation from the presumptive sen- tence. The trial court accepted and com- plied with this plea negotiation.

Defendant is currently serving his 90 month sentence at the Correctional Facility at Oak Park Heights.

On November 1, 1983, the Minnesota Sentencing Guidelines Commission modi- fied certain presumptive sentences, includ-

ing gun-related offenses. The presumptive sentence for a repeat gun-related offender was reduced from 90 months to 60 months with the offender able to earn good time off the 60 months of one day for each two days served with good behavior. Pursuant to Minn.Stat. § 244.09, subd. 11, this modification was intended to apply retroactively.

Defendant's sentencing judge submitted a Departure Report outlining his reasons for not reducing defendant's sentence. Defendant appeals raising the following issues.

### ISSUES

1. Does Minn.Stat. § 244.09, subd. 11, automatically entitle appellant to a reduction of his sentence?

2. Are the departure reasons provided by the sentencing judge substantial and compelling enough to sustain the originally imposed sentence?

### ANALYSIS

■ *State v. Northard*, 348 N.W.2d 764 (Minn.Ct.App.1984) held that the new presumptive sentence must be imposed unless a departure is appropriate. Here, the sentencing court complied with the original plea negotiation and sentenced defendant to a 90 month sentence. Although the Sentencing Guidelines have changed the presumptive sentence, the sentencing court retains the right to maintain the original sentence if appropriate departure reasons are provided.

■ Here, of the four departure reasons stated by the judge the only inappropriate reason is the fact that a gun was used in committing the offenses. That factor was already taken into account by the legislature in determining the elements of the mandatory minimum sentence for using a firearm. It cannot also be used as a basis for a durational departure. *See, Northard; State v. Hagen*, 317 N.W.2d 701 (Minn. 1982).

The first of the three valid departure reasons cites defendant's other egregious conduct while committing the offense of second degree criminal sexual assault.

■ Generally the sentencing court may look at the underlying course of conduct in order to reach the conclusion that defendant's conduct was sufficiently serious to justify departure. *State v. Cermak*, 344 N.W.2d 833 (Minn.1984), relying on *State v. Rott*, 313 N.W.2d 574 (Minn.1981). In *Rott* defendant committed a series of thefts by check. Pursuant to a plea agreement she was convicted and sentenced. She admitted that the offenses of which she was convicted were part of an ongoing scheme, or course of conduct, and that she committed all of the offenses, even those of which she was not convicted. She also admitted that all the offenses were related. Considering all the conduct, the sentencing court departed durationally, and the Supreme Court upheld the departure.

■ Here, defendant admitted kidnapping and assaulting his daughter with a weapon. The evidence is clear that these acts and the act for which defendant was convicted are all part of the same course of conduct. Therefore, the court properly considered these as departure reasons. Whether the charged, but unconvicted, acts can *alone* justify departure in this case need not be decided since there are other appropriate reasons for departure.

The second reason justifying maintaining the original sentence is the victim's vulnerability due to her trust in defendant which allowed him to commit the crime.

Vulnerability due to the victim's trust was upheld as a sufficient reason for departure in *State v. Schmit*, 329 N.W.2d 56 (Minn.1983). In *Schmit* the court found that the victim apparently trusted her defendant-husband enough to go to sleep in his presence and it was while she was asleep that he killed her.

Here, the victim trusted her defendant-stepfather enough to go riding alone in a car with him and it was while she was with him alone in the car that he raped her. The victim's vulnerability here is no less than the victim's vulnerability in *Schmit*.

If anything, the victim in this case is more vulnerable because her stepfather is in a position of authority over her.

It is important to note that under Minn. Stat. § 609.343, subd. (d) (Supp.1983), of which defendant was charged and convicted, the victim's vulnerability due to defendant's position of authority has not already been taken into account by the legislature in setting a penalty for this crime. Therefore, this can be used in this case to justify departure. (This would not be the case if victim was under 16 at the time of the crime and defendant was charged under Minn.Stat. § 609.343, subd. (b) (Supp.1983)).

The third reason justifying departure is defendant's gratuitous cruelty to the victim in committing the offense. Defendant threatened the daughter that if anyone found them while he was raping her someone would get killed, maybe even three people. After gagging and tying a rope around her neck he also threatened that if she wiggled too much the rope would strangle her. He then left her locked in a garage naked in 18 degree temperatures.

*State v. McClay*, 310 N.W.2d 683 (Minn. 1981) held gratuitous cruelty to the victims is a valid reason for departure. Although *McClay* involved assault, not sexual assault, the principle applies. Leaving someone locked in a garage naked in 18 degree temperature is gratuitous cruelty unnecessary to the commission of the offense.

■ Generally, verbal threats are not enough to justify departure. However, in *State v. Cermak*, 344 N.W.2d at 840, defendant Cermak committed fellatio on a 12-year-old boy and threatened to "break every bone in his body" if the boy told anyone about the sex act. "That fact makes the defendant's conduct particularly cruel," the court said. It makes departure a "relatively easy one to justify."

Here, defendant's threatening to kill not only the daughter, but also others if she made noise during the assault is no less cruel.

## DECISION
We affirm the trial court's originally imposed sentence of 90 months because the court provided more than sufficient reasons to justify maintaining the 90 month sentence for this heinous crime.