*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0263**

Michael Edmund Richmond, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed October 6, 2025
Affirmed
Connolly, Judge**

Wright County District Court
File No. 86-CR-21-5068

Cathryn Middlebrook, Chief Appellate Public Defender, Sean Michael McGuire, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Brian A. Lutes, Wright County Attorney, Shane E. Simonds, Criminal Division Chief,
Jennifer K. Buske, Assistant County Attorney, Buffalo, Minnesota (for respondent)

        Considered and decided by Schmidt, Presiding Judge; Connolly, Judge; and Segal,

Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

Appellant challenges the summary denial of his petition for postconviction relief, arguing that he is entitled to withdraw his guilty plea because his plea was involuntary and unintelligent. Appellant also argues that the district court abused its discretion by denying his postconviction petition without an evidentiary hearing. We affirm.

## FACTS

In October 2021, respondent State of Minnesota charged appellant Michael Edmund Richmond in Wright County with one count of first-degree criminal sexual conduct and five counts of felony use of minors in a sexual performance/pornographic work. The complaint alleged that appellant sexually assaulted an 18-month-old child. Shortly after the complaint was filed in Wright County, appellant was charged in Hennepin County with two counts of second-degree criminal sexual conduct against one child, and one count of first-degree criminal sexual conduct against a different child. That complaint alleged that appellant sexually assaulted both children when they were grade-school aged.

In August 2022, appellant pleaded guilty to first-degree criminal sexual conduct in Wright County. In exchange for appellant's guilty plea, respondent agreed to dismiss the remaining counts. Appellant also agreed to a double upward departure, "presuming [his] criminal history score at sentencing for this case will be zero, for a total of 288 months in prison." And the plea agreement contemplated the charges in Hennepin County. Specifically, the prosecutor stated that, should appellant resolve "his matter in Hennepin County," and, "[i]f for some reason that is sentenced first," the prosecutor would seek a

concurrent sentence with any sentence in Hennepin County. A signed plea petition was then filed in which appellant acknowledged that, if he entered a guilty plea, "the prosecutor will do the following . . . : 288 months, concurrent w/ Hennepin County."

Appellant was sentenced to 288 months in prison for the Wright County offense. Several months later, appellant pleaded guilty to one count of first-degree criminal sexual conduct and one count of second-degree criminal sexual conduct related to the charges in Hennepin County. Appellant was then sentenced to 90- and 144-month terms for the Hennepin County offenses, both of which were imposed consecutive to appellant's 288-month sentence in Wright County.

Appellant petitioned for postconviction relief claiming that his plea agreement in Wright County provided for concurrent sentencing with Hennepin County and that, because his sentences for the Hennepin County offenses were pronounced consecutive to his Wright County sentence, he did not receive the benefit of his Wright County plea bargain. Thus, appellant argued that his guilty plea was involuntary and unintelligent and, as a result, he must be allowed to withdraw his plea. Appellant argued further that an evidentiary hearing should be held where he would testify about his understanding of the plea agreement in Wright County.

The district court determined that appellant's plea was voluntary because respondent "did not promise an unfulfilled or unfulfillable promise," and "[n]o promise was broken." The district court also determined that appellant's plea was intelligent because the record demonstrates that appellant understood the terms of his plea agreement

3

in Wright County.  The district court, therefore, summarily denied appellant's petition for postconviction relief.  This appeal follows.

## DECISION

Appellant challenges the denial of his postconviction petition.  This court reviews the district court's denial of a postconviction petition for an abuse of discretion.  *Pearson v. State*, 891 N.W.2d 590, 596 (Minn. 2017).  In doing so, we review legal issues de novo and review factual findings to determine if there is sufficient evidentiary support in the record to support the finding.  *Id.*  A district court abuses its discretion "when it has exercised its discretion in an arbitrary or capricious manner, based its ruling on an erroneous view of the law, or made clearly erroneous factual findings."  *Id.* (quotation omitted).

"A defendant has no absolute right to withdraw a guilty plea after entering it." *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016) (quotation omitted).  But a defendant must be permitted to withdraw a guilty plea "[a]t any time" if "withdrawal is necessary to correct a manifest injustice."  Minn. R. Crim. P. 15.05, subd. 1.  "A manifest injustice exists if a guilty plea is not valid.  To be constitutionally valid, a guilty plea must be accurate, voluntary, and intelligent."  *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010) (citation omitted).  The validity of a guilty plea is a question of law that we review de novo.  *State v. Mikulak*, 903 N.W.2d 600, 603 (Minn. 2017).  Appellant, as the party seeking relief, bears the burden of establishing that his plea is invalid.  *See Raleigh*, 778 N.W.2d at 94.

4

Appellant argues that he is entitled to withdraw his guilty plea because his plea was neither voluntary nor intelligent. He also argues that the district court abused its discretion by not holding an evidentiary hearing. We address these arguments in turn.

A. *Appellant's plea was voluntary.*

"To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement." *Id.* at 96. The requirement that a plea be voluntary "ensures a defendant is not pleading guilty due to improper pressure or coercion." *Id.* (citation omitted). A guilty plea is not voluntary if it is "induced by unfulfilled or unfulfillable promises." *James v. State*, 699 N.W.2d 723, 729 (Minn. 2005) (quotation omitted). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 728 (quotation omitted). "[A] defendant should be allowed to withdraw his guilty plea if an unqualified promise is made on the sentence to be imposed and that promise is not fulfilled." *Black v. State*, 725 N.W.2d 772, 776 (Minn. App. 2007).

Appellant argues that, because his "plea agreement promised sentencing 'concurrent with Hennepin County,' and because he received consecutive sentencing, his Wright County plea was involuntary, and he is entitled to plea withdrawal." We are not persuaded because the record reflects that appellant was never *promised* concurrent sentencing. Instead, the prosecutor stated on the record at the plea hearing that, under the terms of the plea agreement, appellant would plead guilty to first-degree criminal sexual conduct, the remaining counts would be dismissed, and "[t]here's going to be a double upward

5

departure." The prosecutor then added that "[t]he agreement, *should he also resolve his matter in Hennepin County*, is that I would do this concurrent to the Hennepin County matter. *If for some reason that is sentenced first*, given that is the legal presumption, that is our agreement." (Emphasis added.) Thus, the prosecutor's statements on the record at the plea hearing clearly show that appellant was promised concurrent sentencing only *if* the Wright County offense was sentenced *after* the Hennepin County charges were resolved.

Moreover, the record reflects that the prosecutor reiterated the plea agreement at the sentencing hearing. The district court then inquired about the Hennepin County charges, and the following exchange occurred:

> DEFENSE COUNSEL: There's a case in Hennepin pending as well, Your Honor.
>
> DISTRICT COURT: So he hasn't been sentenced there?
>
> DEFENSE COUNSEL: No, he hasn't, Your Honor.
>
> DISTRICT COURT: But the intent is just to be concurrent with that; is that correct?
>
> DEFENSE COUNSEL: That's the intention of Wright County, yes.
>
> PROSECUTOR: And, Your Honor, just to be clear, obviously, I can't control what Hennepin County ultimately decides. So we didn't come to a global agreement.

The prosecutor's statements on the record at both the plea hearing and sentencing hearing demonstrate that appellant was never promised a concurrent sentence with any sentence in Hennepin County. Rather, the prosecutor's agreement with respect to any sentence in Hennepin County is that, *if* appellant was sentenced in Wright County *after* he

6

was sentenced in Hennepin County, the Wright County sentence would be concurrent to the Hennepin County sentence.

Appellant argues that "if the prosecutor's description of the order of sentencing was intended to qualify the state's promise, [he] never agreed with the prosecutor's description of the agreement." We disagree. The record reflects that, after the terms of the plea agreement were stated on the record, there was a discussion related to the timing of appellant's Wright County sentencing in light of his programing and the pending nature of the Hennepin County charges. The district court then stated: "[Appellant], you heard all of this discussion. Is this what you want to do and consistent with your agreement?" Appellant responded, "yes, I have heard everything." Appellant's response indicates an acknowledgment that the prosecutor's description of the plea agreement was consistent with appellant's wishes. Although appellant claims that his answer of "yes" to the district court's question should be interpreted as an acknowledgment that he heard the question, the context of the response indicates a direct response to the district court's question of "[i]s this what you want to do and consistent with your agreement." And the record reflects that appellant was asked multiple times during the plea hearing if he had any questions, and he answered in the negative.

Appellant further argues that the prosecutor's description of the plea agreement on the record was "vague" and inconsistent with his signed plea petition. But as addressed above, the prosecutor clearly stated the terms of the plea agreement on the record. Although the signed plea petition is less clear, it is not inconsistent with the plea agreement as stated on the record. Rather, the plea petition states: "288 months, concurrent w/

7

Hennepin County." The prosecutor clarified on the record at the plea hearing that this meant that appellant's Wright County offense would be concurrent with any Hennepin County sentence *only if* those sentences were pronounced first. And the prosecutor further clarified at the sentencing hearing that no "global" plea agreement was ever reached and that he could not "control what Hennepin County ultimately decides." At no point did appellant ever object to the prosecutor's recitation of the plea agreement.

Because the prosecutor never promised concurrent sentences with Hennepin County, appellant's plea agreement was not induced by unfulfilled or unfulfillable promises. Accordingly, appellant has not shown that his guilty plea was involuntary.

B.    *Appellant's plea was intelligent.*

"The intelligence requirement ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea." *Raleigh*, 778 N.W.2d at 96. "'Consequences' refers to a plea's direct consequences," notably fines and maximum sentences. *Id.* A defendant "need not know *every* consequence" of his plea for it to be intelligent, but he does need to know the direct consequences, which are "definite, immediate[,] and automatic and are punitive and a part of a defendant's sentence." *State v. Brown*, 896 N.W.2d 557, 561 (Minn. App. 2017) (quotations omitted), *rev. denied* (Minn. July 18, 2017). Moreover, an intelligent guilty plea must "represent a knowing and intelligent choice among the alternative courses of action available." *Dikken v. State*, 896 N.W.2d 873, 877 (Minn. 2017) (quotation omitted).

Appellant argues that, if respondent's "plea offer did not provide for concurrent sentencing regardless of sentencing order," his plea was unintelligent "because the record

of the hearing demonstrates that [he] was told the sentences would be concurrent and he clearly understood that to be [respondent's] offer." But appellant's argument relies on a misconstruction of the record. As addressed above, the prosecutor explained the terms of the plea agreement on the record at the plea hearing and the record reflects that the terms of that agreement did not include a promise for concurrent sentencing. Instead, concurrent sentencing was promised *only if* the Wright County offense was sentenced *after* any Hennepin County sentence. Although appellant may have preferred concurrent sentencing, the record reflects that appellant understood the terms of his plea agreement.

Moreover, despite the prosecutor's unequivocal statement on the record that appellant's sentence would be concurrent with Hennepin County "should" he resolve that matter "first," the record reflects that appellant wanted to be sentenced promptly in Wright County so that he could begin programming in prison. Appellant requested prompt sentencing in Wright County despite acknowledging on the record that the Hennepin County charges were unresolved. And the record reflects that appellant agreed that he did not have any questions related to his plea agreement, nor did he otherwise object to any statements made by the prosecutor that clarified that the Wright County sentence would be concurrent only if it was sentenced after any Hennepin County sentence.

Because the record reflects that appellant understood the direct consequences of his plea agreement, his plea was intelligent. Therefore, appellant is not entitled to withdraw his guilty plea because he has failed to show that his plea was invalid.

C.    *Appellant was not entitled to an evidentiary hearing.*

The postconviction court must hold an evidentiary hearing on the petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2024). When determining whether the petitioner is entitled to an evidentiary hearing, the postconviction court is required to consider the facts alleged in the petition as true and construe them in the light most favorable to the petitioner. *Andersen v. State*, 913 N.W.2d 417, 422-23 (Minn. 2018). "[T]he burden is on a petitioner to show facts entitling the petitioner to relief." *Allwine v. State*, 994 N.W.2d 528, 541 (Minn. 2023).

Appellant argues that the district court abused its discretion by not ordering an evidentiary hearing because his "postconviction petition and supporting memoranda raised material questions of fact pertaining to whether he understood the concurrency clause of the plea agreement to be limited by [the] sentencing order." We disagree. Again, the parameters of the plea agreement were plainly stated on the record and appellant stated on the record that he understood the terms of the agreement. As such, the record conclusively shows that appellant is entitled to no relief. *See* Minn. Stat. § 590.04, subd. 1.

Appellant also argues that an evidentiary hearing should have been granted so that he could present evidence related to his "alternative claim that his trial attorney was ineffective." But the record reflects that appellant did not specifically raise the issue of ineffective assistance of counsel in his petition for postconviction relief or in his supporting memorandum to the petition. Indeed, the only reference to an ineffective-assistance-of-counsel claim is in one sentence in appellant's informal reply to respondent's reply to

10

appellant's postconviction petition. Because appellant never specifically raised an ineffective-assistance-of-counsel claim in his postconviction petition, the district court was under no obligation to hold an evidentiary hearing related to that issue.

Moreover, "[i]t is well settled that a party may not raise issues for the first time on appeal from denial of postconviction relief." *Scheicher v. State*, 718 N.W.2d 440, 445 (Minn. 2006) (quotations omitted). Because appellant never raised an ineffective-assistance-of-counsel claim below, any argument related to that issue is not properly before this court. Accordingly, the district court did not abuse its discretion by summarily denying appellant's petition for postconviction relief.

**Affirmed.**